IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNA G. WOODS,           *
      Plaintiff,           *
                     *
      v.                *       Civil No. CCB-06-0705
                     *
STEWART TITLE          *
GUARANTY COMPANY,   *
      Defendant       *
                     *
                   *****

MEMORANDUM

Plaintiff Donna Woods ("Woods") has brought this action, on behalf of herself and a similarly situated class of plaintiffs (the "class members"), against Stewart Title Guaranty Company ("Stewart"). The Complaint asserts that Stewart has overcharged parties who refinance their homes within ten years of obtaining valid title insurance on the same property by not offering them discounted "reissue" rates. She asserts claims under Maryland law for "money had and received," negligent misrepresentation, and civil conspiracy. Stewart has filed a motion to dismiss. The motion will be denied as to Woods' claim for money had and received but granted as to the claims for negligent misrepresentation and civil conspiracy.[1]

I.

As required on consideration of a motion to dismiss, this court must take the facts as

---

[1]Stewart originally argued for dismissal on the grounds that Woods failed to exhaust the administrative remedy provided by the Maryland Code for challenging the application of insurance rates. *See* Md. Code. Ann., Ins. § 11-212. Stewart properly withdrew this argument in its Reply Memorandum, after Woods pointed out that the subtitle of the Maryland Code Stewart cites as providing an administrative remedy explicitly does not apply to title insurance. Md. Code. Ann., Ins. § 11-202(b) ("This subtitle does not apply to: . . . (4) title insurance; . . .").

alleged in the Complaint to be true.  The purported class is defined as:

> All persons or entities in Maryland who, within 10 years of having previously purchased title insurance in connection with their mortgage or fee interest, refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Stewart that exceeded the applicable premium discount or "reissue rate" for title insurance on file with the Maryland Insurance Administration that such persons or entities should have been charged.  Excluded from the Class are officers and directors of the Defendants, as well as any personnel of the Court.

Woods asserts that her claims are typical of each class member's claims.

Woods has owned her home in Dundalk, Maryland, since 2000.  At the time she purchased the property, she obtained a valid owner's title insurance policy.  In September 2001, she refinanced her home, at the same time obtaining a lender's title insurance policy with a face value of $65,501 from Performance Title Company ("Performance").  Performance was acting for Stewart as a local Insurance Producer, for which it received compensation from Stewart in the form of a share of the premium paid by Woods.  For the September 2001 transaction, Performance (acting for Stewart) charged Woods a $99 premium, reflecting a discount of 40% off of the published rate.

In September 2002, Woods again refinanced her home, with Performance again providing a lender's title insurance policy.  The face value of the September 2002 policy was $63,895, and she was charged a premium of $160.  This did not reflect any discount; Woods alleges that she was entitled to the same 40% discount she had received in September 2001, which would have resulted in a charge of $96.

In July 2003, Woods refinanced her home a third time.  Performance provided her with a lender's title insurance policy with a face value of $64,125.  On this occasion, Woods was charged a premium of $162.50, again reflecting no discount.  The 40% discount to which Woods

alleges she was entitled would have resulted in a charge of only $97.50. It is this transaction on which Woods bases her claims.[2]

Woods avers that Stewart engaged in a pattern of willfully and knowingly denying her and the members of the class she seeks to represent the discounted rates to which they were entitled when refinancing loans for which there was valid title insurance. Stewart then distributed a portion of the overcharge to its local Insurance Producers, such as Performance, as a kickback or referral fee. The local Insurance Producers are identified in the Complaint as "unnamed co-conspirators", but have not been named as defendants.

## II.

Federal Rule 12(b)(6) provides for the dismissal of a complaint where the facts alleged, if taken as true, fail to state a cause of action. Fed. R. Civ. P. 12(b)(6). Because the purpose of a 12(b)(6) motion to dismiss is "to test the legal sufficiency of the statement of the claim", the court must consider all of the plaintiff's well-pled allegations as true, and "liberally construe the complaint as a whole". *Foxglenn Investors Ltd. Partnership v. Housing Authority for Prince George's County*, 844 F. Supp. 1078, 1082 (D. Md. 1993); *see also Int'l Assoc. of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 491-92 (D. Md. 2005). Such a motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Int'l Assoc. of Machinists*, 390 F.

---

[2]In its motion to dismiss, Stewart seeks dismissal of Woods's claims to the extent that they are based on the September 2002 refinancing transaction because they are barred by the applicable three year statute of limitations. Md. Code. Ann., Cts. & Jud. Proc. § 5-101. In her opposition Woods agrees that any claim (individual or class) based upon the September 2002 transaction is time-barred. She states that allegations concerning that transaction are made only for the purpose of reciting relevant factual background about the July 2003 transaction upon which her claims are founded.

Supp. at 491 (internal citation omitted).

III.

In Count One Woods asserts a claim for money had and received.  This claim is analogous to an unjust enrichment or restitution claim.  *Benson v. State*, 389 Md. 615, 652-653, 887 A.2d 525, 547 (Md. Ct. App. 2005) (explaining that "[t]he action for money had and received is a common count used to bring a restitution claim under the common law writ of assumpsit") (citing *Ver Brycke v. Ver Brycke*, 379 Md. 669, 698 n.13, 843 A.2d 758, 775 n.13 (Md. Ct. App. 2004)).  In Maryland, "this count 'lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain.'" *Benson*, 389 Md. at 652-53 (internal quotations omitted).

Stewart asserts that Count One must be dismissed because a cause of action based on money had and received requires a showing of mistake, fraud, deceit, or failure of consideration.  This may be too narrow a reading of the cause of action.  The elements of the analogous unjust enrichment claim have been consistently stated in the Maryland courts:

> (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.

*Benson*, 389 Md. at 651-52, 887 A.2d at 546 (internal citations omitted); *see also The Redemptorists v. Coulthard Services, Inc.*, 145 Md.App. 116, 155, 801 A.2d 1104, 1127 (Md. Ct. Spec. App. 2002).  There is no explicit requirement for fraud or deceit as to this claim – the circumstances must simply be such that permitting the defendant to retain the benefit would be inequitable.  In any event, Woods's allegations that Stewart knew the plaintiff class was entitled to the discounted rate and instead charged the plaintiffs the full rate suggest that Woods may be

able to prove fraud or deceit.  If it turns out that Stewart did not realize the plaintiff class was

entitled to the discounted rate, then Woods may be able to prove mistake of law or fact.  Thus,

even assuming that mistake, fraud, deceit, or failure of consideration is a required element of a

money had and received claim, it is not clear on the face of the Complaint that Woods could not

satisfy those elements. Accordingly, Stewart's motion to dismiss Count One is denied.

IV.

In Count Two Woods asserts a claim for negligent misrepresentation.  The elements of

such a claim under Maryland law are well settled:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false
> statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement,
> which, if erroneous, will cause loss or injury;
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
> (5) the plaintiff suffered damage proximately caused by the defendant's negligence.

*Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 549 (D. Md. 1997).

Woods's negligent misrepresentation claim fails as a matter of law because she has

alleged no facts reflecting that Stewart made any misrepresentation to her.[3]  *See id.* at 549-50.

---

[3]Stewart also argues that Woods has not shown any basis for imposing a duty of care.
Where, as here, the plaintiff claims only economic losses, "courts have generally required an
intimate nexus between the parties as a condition to the imposition of liability. This intimate
nexus is satisfied by contractual privity or its equivalent." *Tischler v. Baltimore Bancorp*, 801 F.
Supp. 1493, 1504 (D. Md. 1992).  It is clear here that there was no direct contractual privity, but
there may have been sufficient foreseeability of injury and of reliance to justify imposing a duty
based on a relationship equivalent to privity.  *See, e.g.*, *Superior Bank, F.S.B. v. Tandem Nat'l
Mortgage, Inc.*, 197 F. Supp. 2d 298, 336 (D. Md. 2000) (describing instances of duty imposed
where the parties engaged in face-to-face interaction or extended business relationships).
Because the question of duty is unclear at this stage of the proceedings, it would not be
appropriate to grant the motion to dismiss on that grounds.  This is academic, however, because
the negligent misrepresentation claim will be dismissed based on Woods's failure to allege an
affirmative representation.

Woods asserts only one instance of an affirmative representation – that Stewart disclosed an excessive rate for title insurance on her HUD-1 statement.  The Complaint does allege that the HUD-1 statement "indicates that Stewart charged and collected from Ms. Woods a premium of $162.50 for the Lender's title insurance policy" (Complaint ¶ 39) but, as Stewart points out, this is a true statement.  Nowhere does Woods allege that the HUD-1 statement made any representation as to the legality or accuracy of the amount charged and collected.  Thus, although this may be an affirmative representation, it is not a false statement and cannot provide a basis for negligent misrepresentation.

Aside from the representation on the HUD-1 statement, Woods appears to rely on Stewart's alleged failure to inform her and the class members that they were entitled to lower rates.  This cannot support a negligent misrepresentation claim.  Although the Maryland courts have alluded to "certain circumstances" under which non-verbal conduct may constitute an affirmative representation (*see, e.g.*, *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 41-42, 517 A.2d 336, 348 (Md. Ct. App. 1986)), Woods has been unable to identify a case in which the courts have actually found such circumstances.

Instead, the facts in this case are similar to those in *Shaw*, where the defendant tobacco company was sued under negligent misrepresentation for failing to disclose the potentially harmful effects of secondhand smoke.  *Shaw*, 973 F. Supp. 539.  The court refused to impose liability, explaining that "[a]t bottom, this allegation amounts to a charge that defendant did nothing, thereby breaching a duty to disclose information . . .", and that "[s]uch inaction does not constitute non-verbal conduct" sufficient to satisfy the first element of the tort.  *Id.* at 550.  Here,

as in *Shaw*, the allegation is that the defendant failed to inform Woods and the plaintiff class that

they were being charged allegedly erroneous rates.  Merely failing to inform the plaintiffs cannot

constitute a misrepresentation.

Because Woods has not alleged facts sufficient to satisfy the first element of the tort of

negligent misrepresentation, Stewart's motion to dismiss will be granted with regard to Count

Two.

V.

Woods' last claim, set forth in Count Three, is for civil conspiracy.  To support that claim

Woods alleges that Stewart

> . . . conspired with each of its local title agents – the Insurance Producers – by
> common agreement and understanding, for: (a) the unlawful purpose of depriving
> [Woods] and Class members of their rights under the statutory provisions and
> common law, . . . and (b) the purpose of unlawfully depriving [Woods] and Class
> members of both their money and property.

Complaint ¶ 68.  Stewart argues that Count Three must be dismissed because it is pled as an

independent cause of action.

The parties agree that civil conspiracy is not recognized as a separate cause of action

under Maryland law.  However, Woods argues that Count Three can survive as a "basis for tort

liability", and she asserts that she has pled all the elements of a civil conspiracy.  Her argument

ignores the deficiency in pleading civil conspiracy as a separate and independent claim.

Under Maryland law, civil conspiracy provides a means of holding a co-conspirator

liable for acts committed in furtherance of the conspiracy by another member.  *Mackey v.

Compass Marketing, Inc.*, 391 Md. 117, 128-129, 892 A.2d 479, 485 (Md. Ct. App. 2006).  A

civil conspiracy is 1) a combination of two or more persons, 2) by an agreement or

understanding 3) to commit an unlawful act or use unlawful means to commit an act not

otherwise unlawful, that 4) results in damages to the plaintiff. *Hoffman v. Stamper,* 385 Md. 1,

24, 867 A.2d 276, 290 (Md. Ct. App. 2005) (internal citation omitted).  However, the agreement

itself is not actionable; instead, the underlying tort is considered to be the act which caused

harm.  Therefore, civil conspiracy will not support a separate cause of action in the absence of

"other tortious injury to the plaintiff." *Mackey*, 391 Md. at 128-129, 892 A.2d at 485.  As

explicitly stated by the Maryland Court of Appeals, it is "improper pleading to allege . . .

conspiracy in [a] separate count[]".  *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 360 n.6, 758

A.2d 95, 110 n.6 (Md. Ct. App. 2000).  Woods has done just that here.  Because civil conspiracy

cannot be pled as an independent cause of action, Stewart's motion to dismiss will be granted as

to Count Three.[4]

A separate order effecting the rulings made in this memorandum is being entered

herewith.


Date:   July 28, 2006                    /s/_____
                                         Catherine C. Blake
                                         United States District Judge

_____

[4]This ruling does not preclude Woods and the class members from relying on a
conspiracy theory to argue that Stewart is liable for the actions of its alleged co-conspirators, the
Insurance Producers.  *See, e.g.*, *Superior Bank*, 197 F. Supp. 2d at 319 (explaining that because
plaintiff pled civil conspiracy as an independent count, the court would dismiss the count, but
would permit the plaintiff to rely on a conspiracy theory in seeking to hold the defendant liable
for the actions of others).